**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

COREY LANE,

    *Plaintiff*,

v.

THE DIVISION OF CHILD PROTECTION AND PERMANENCY ("DCP&P"), MAYLINDA BILLA, in her individual capacity, JOCELYN ROMAN, in her individual capacity, JENNIFER JURKIN, in her individual capacity, ANIKA BURROWES, in her individual capacity,

    *Defendants*.

Civil Action No. 22-4238

**OPINION**

**John Michael Vazquez, U.S.D.J.**

In this action, Plaintiff alleges constitutional violations resulting from child custody litigation. Currently pending before the Court is Defendants' motions to dismiss Plaintiff's Complaint. D.E. 6. The Court reviewed the parties' submissions,[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **GRANTED**.

---

[1] Defendants' brief in support of its motion will be referred to as "Defs. Br." (D.E. 6-1); Plaintiff's opposition will be referred to as "Plf. Opp." (D.E. 8); and Defendants' reply will be referred to as "Defs. Reply" (D.E. 10).

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

*Pro se* Plaintiff, Corey Lane, was married to Angela Wade until their divorce was finalized on April 15, 2014.  Compl. ¶ 19.  Plaintiff and Wade have four children together, and they agreed on joint custody of their children.  *Id.*  On June 12, 2015, Plaintiff received a call from Jocelyn Roman, a caseworker with the New Jersey Division of Child Protection and Permanency ("DCPP" formerly known as "DYFS"), regarding an anonymous phone call alleging that Plaintiff had punched his eight-year-old daughter a few days earlier.  *Id.*  ¶¶ 22, 24-25.  Roman and an Englewood police officer then visited Plaintiff at his home.  *Id.* ¶ 26.  Plaintiff "vigorously protested" the allegation and stated that he "would never punch [his] daughter."  *Id.* ¶ 27.  According to Plaintiff, Roman agreed with him and informed him that it was "more than likely they would be closing the case that following Monday."  *Id.* ¶ 29.  After inspecting Plaintiff's home, Roman went outside to speak with her supervisor, Maylinda Billa.  *Id.* ¶¶ 30-31.  Roman then returned to Plaintiff's home and allegedly informed Plaintiff that she was instructed by Billa to "compel [Plaintiff] to sign a safety protection plan that would keep [his] children from [him] pending therapeutic services."  *Id.* ¶¶ 32-34.  Plaintiff complied because he was told that if he did not, DCP&P would take him to court.  *Id.* ¶ 34.

On June 23, 2015, DCPP filed a complaint in the New Jersey Superior Court against Plaintiff to transfer sole physical custody of his four children to Wade pursuant to Title 9.  *Id.* ¶

---

[2] The factual background is taken from Plaintiff's Complaint, D.E. 1 ("Compl."). When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  A court may also consider any document integral to or relied upon in the Complaint and take judicial notice of matters of public record, such as court orders and docket entries. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *Khan v. Borough of Englewood Cliffs*, No. 12-7837, 2014 WL 295069, at *3 (D.N.J. Jan. 27, 2014) (citation omitted).

35. That same day, Plaintiff had a hearing after which he asked Roman why she would "falsely accuse" him, and she allegedly responded that it was not her. *Id.* ¶ 38. On June 28, 2015, during a hearing, Plaintiff alleges that DCPP failed to produce any proof that Plaintiff "caused demonstrable harm to any of [his] children that would deem [him] as being an unfit father." *Id.* ¶ 39. Plaintiff also allegedly reviewed Roman's notes at the DCPP headquarters on August 27, 2015, and purportedly saw that the notes indicated that his daughter adores him and mentioned how his children ran to greet him when he arrived at the supervised visit location. *Id.* ¶¶ 40-42.

On September 8, 2015, the Superior Court granted DCPP's request to withdraw the Title 9 complaint and proceed under Title 30. *Id.* ¶¶ 44-46. On October 20, 2015, during another hearing, Plaintiff was ordered to have a psychological evaluation and he complied. *Id.* ¶¶ 47-48. Throughout December 2015, Plaintiff was unsuccessful in his attempts to schedule supervised visits with his children. *Id.* ¶¶ 50-54. This caused Plaintiff "further mental anguish." *Id.* ¶ 54. On January 20, 2016, Plaintiff sought a psychological evaluation and therapy with Dr. Klempner. *Id.* ¶ 55. Plaintiff then submitted a letter from Dr. Klempner to the state court on February 24, 2016, in which Dr. Klempner "advised [DCPP] that she saw no reason why [Plaintiff's] children should not be returned to [his] care." *Id.* ¶ 57. On June 21, 2016, the Superior Court entered an order terminating the litigation and requiring the "break up between" Plaintiff and his children, based on a "'best interest' analysis absent requisite proof of harm." *Id.* ¶ 66; Superior Court Order at 3-4 (D.E. 1-2).[3]

Plaintiff then began to "research [] DCPP's policies and procedures," to determine "if there was an improper motive that [was] making them act so evil." *Id.* ¶ 58. Plaintiff found that under

---

[3] The Court's citations to "Superior Court Order" correspond to the Exhibit attached to Plaintiff's Complaint (D.E. 1-2) and the page numbers cited correspond with those in the ECF header.

N.J.A.C. 10:129-2.4(b)(1)(2), Defendants must corroborate a child abuse allegation with either a medical opinion stating that the guardian's explanation is inconsistent with the injury or an admission from the alleged perpetrator. *Id.* ¶ 60. Plaintiff alleges that this policy "explain[s]" Defendants' "wicked thirst to get [him] to comply with their [p]sychologist evaluations" so that they could "falsely say that [he] admitted to wrongdoing," rather than "fulfill their fundamental requirements to obtain a medical expert[']s opinion." *Id.* ¶ 61.

Plaintiff has since "spent an exhausting amount of time unsuccessfully back and forth to court throughout the past 85 months." *Id.* ¶ 67. Plaintiff brought a civil rights action before this Court on December 1, 2016, against the State of New Jersey ("2016 Action"), which was dismissed with prejudice for lack of subject matter jurisdiction and failure to state a claim.[4] On June 23, 2022, Plaintiff filed the current Complaint. The Complaint appears to assert 10 counts[5]: seven pursuant to 42 U.S.C. § 1983,[6] one pursuant to the New Jersey Civil Rights Act ("NJCRA"), and two for damages.[7] Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim.

---

[4] *See Lane v. State of New Jersey*, No. 16-8948, 2019 WL 6896236 (D.N.J. Mar. 18, 2019).

[5] Counts One through Six are numbered in the Complaint. Plaintiff appears to indicate all remaining counts with bold, capitalized, centered headers, followed by numbered paragraphs. *See* Compl. at 25-31.

[6] The 1983 claim for "negligence resulting from breach of duty" also appears to be brought under N.J.S.A. 30:4C-12, which is a statute that addresses "[f]iling [a] complaint; investigation; application for court order; [and] hearing," when it appears that a parent or guardian is unfit to be entrusted with the care of a child. *See* N.J.S.A. 30:4C-12; Compl. ¶ 84.

[7] These claims are nearly identical to those brought in the 2016 Action. *See* Amended Complaint, *Lane v. State of New Jersey*, No. 16-8948, 2019 WL 6896236 (D.N.J. Mar. 18, 2019), D.E. 62.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

In deciding a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack. *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (internal quotation marks and citation omitted). A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Id*. Here, Defendants argue lack of subject matter jurisdiction based on sovereign immunity and *Rooker-Feldman* grounds, thereby raising a facial attack.[8] *See Kelly v. Pier*, No. 16-3417, 2017 WL 3397030, at *5 (D.N.J. Aug. 8, 2017). Accordingly, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads

---

[8] While Defendants raises their Eleventh Amendment sovereign immunity defense under Rule 12(b)(1), they recognize that an Eleventh Amendment sovereign immunity defense may be analyzed under either Rule 12(b)(1) or Rule 12(b)(6). *See* Defs. Br. at 6 n.4 (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999)).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

### III. ANALYSIS

The Court first addresses Defendants' argument that each claim is barred by the statute of limitations. Defs. Br. at 11-12. The statute of limitations is an affirmative defense not normally decided on a motion to dismiss. *See Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id.* (citation omitted). "Section

1983 has no statute of limitations of its own but borrows the statute of limitations from state personal injury torts." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (citation omitted). In New Jersey, personal injury torts have a two-year statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Thus, the applicable statute of limitations for Plaintiff's Section 1983 claims is two years. *Id.*; *see also Parodi v. McLaughlin*, No. 8-1095, 2009 WL 197575, at *2 (D.N.J. Jan. 26, 2009) ("The statute of limitations on claims of federal civil rights violations pursuant to § 1983 is borrowed from the state personal injury statute of limitations, which is two-years in New Jersey."). The same is true for Plaintiff's NJCRA claims. *See Bullock v. Borough of Roselle*, No. 17-13208, 2018 WL 4179481, at *9 (D.N.J. Aug. 31, 2018) ("Like other federal and state courts before me, I conclude that NJCRA, like § 1983, is subject to the State's general two-year personal injury statute of limitations.").

Because Plaintiff's Complaint was filed on June 23, 2022, Plaintiff must assert claims that accrued on or after June 23, 2020, to fall within the two-year statute of limitations. The factual bases for each of Plaintiff's claims, however, arise from Defendants' 2015 investigation and a 2016 New Jersey Superior Court order determining Plaintiff's custody and visitation rights with his children. *See* Compl. ¶¶ 20-67; *see also* Superior Court Order at 3-4 (D.E. 1-2). Indeed, the latest date referenced in both the Complaint and Superior Court Order is June 21, 2016, the date that the state court entered an order limiting Plaintiff's custody and visitation rights. *Id.*

Plaintiff responds that "because [] Defendants have yet to rectify their negligence offense by not reunifying the bond between my children and I in accordance to my [d]ivorce [d]ecree since the date they forced me to sign their June 12, 2015 safety protection plan . . . the clock for the [s]tatute of [l]imitations ha[s] not yet begun." Plf. Opp. at 4. Construing the pleadings liberally, Plaintiff appears to argue that the Superior Court order resulted in ongoing injuries, and thus

7

constituted a continuing violation of his rights. "The continuing violations doctrine is an equitable exception to the timely filing requirement," which states that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal quotation marks and citation omitted). However, "'[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'" *Id.* at 293 (quoting *Ocean Acres Ltd. v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 106 (4th Cir.1983)).

In *Rose v. County of York*, the Third Circuit considered whether the damages resulting from the enforcement of a custody order constituted a "continuing violation." 262 Fed. App'x 485, 487 (3d Cir. 2008). The Third Circuit found that the "mere 'enforcement' of the order, without more," could not constitute a continuing violation because the purported continuing violation arose not from a continual unlawful act, but "from the ill effects of the original alleged violation," i.e., the custody order. *Id.* Here, as in *Rose*, Plaintiff's claims—that the investigation and enforcement of the custody order violate his rights—do not amount to continuing violations which would provide for an equitable exception to the statute of limitations because they "arise from the ill effects of the original alleged violation," rather than a continuing unlawful act. *See Rose*, 262 Fed. App'x at 487; *Cowell*, 263 F.3d at 293.[9] Thus, because the two-year statute of

---

[9] *See also Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 84-85 (3d Cir. 2014) (holding that the plaintiff's suit was untimely because the plaintiff could not "use the continuing violations doctrine to circumvent the statute of limitations when [the plaintiff] was well aware of the alleged emotional distress" at the time that the child safety plan was executed); *Edelglass v. New Jersey*, No. 14-760, 2015 WL 225810, at *18 (D.N.J. Jan. 16, 2015) (finding that the continuing violations doctrine did not apply because the plaintiffs' claims arose from the fact that they were unable to parent their children following a particular hearing date or court order, thus the claims arose from the ill effects of the original alleged violation, rather than a continual unlawful act).

limitations bars Plaintiff's Section 1983 and NJCRA claims, as well as the damages claims that stem from those alleged violations, the Complaint is dismissed with prejudice.[10]

### IV. Conclusion

When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, which affords a plaintiff with leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110–11 (3d Cir. 2002). The district court may deny leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party; or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Normally, no matter how tenuous the claims, the Court would not dismiss with prejudice, particularly when a plaintiff is proceeding *pro se.* Here, however, because Plaintiff's claims are time-barred, any attempted amendment would be futile. The Complaint is therefore dismissed with prejudice.

For the reasons stated above, Defendants' motion to dismiss, D.E. 6, is **GRANTED with prejudice**. An appropriate Order accompanies this Opinion.

Dated: January 3, 2023.

_____
John Michael Vazquez, U.S.D.J.

---

[10] Because Plaintiff's claims are time-barred, the Court does not reach the merits of the parties' *res judicata*, *Rooker-Feldman*, sovereign immunity, and failure to state a claim arguments. *See* Defs. Br. at 8-11, 13-19; Plf. Opp. at 2-5; Defs. Reply at 1-3.